EXPANCEL, INC., PLAINTIFF *v.* UNITED STATES OF AMERICA, DEFENDANT

Court No. 93–08–00492

(Dated June 21, 1996)

*Ober, Kaler, Grimes, and Shriver (Peggy Chaplin, John F. Morkan, III,* and *George H. Falter, III),* for plaintiff.
*Frank W. Hunger,* Assistant Attorney General; *Joseph I. Liebman,* Attorney-in-Charge, International Trade Field Office, Civil Division, United States Department of Justice *(John J. Mahon);* Office of the Assistant Chief Counsel, International Trade Litigation, United States Customs Service *(Edward N. Maurer),* of counsel, for defendant.

## MEMORANDUM AND ORDER

GOLDBERG, *Judge:* This matter is before the Court on the parties' cross-motions for summary judgment. Defendant claims that the United States Customs Service ("Customs") properly classified the subject merchandise as "[a]crylic polymers in primary forms: * * * Other: * * * Other: Plastics" ("acrylic polymers that are plastics"), under subheading 3906.90.20, HTSUS, with a duty rate of 6.3 percent. Plaintiff claims that Customs should have classified the subject merchandise as "[a]crylic polymers in primary forms: * * * Other: *.* * * Other: * * * Other" ("other acrylic polymers"), under 3906.90.50, HTSUS, with a duty rate of 4.2 percent. The Court exercises its jurisdiction pursuant to 28 U.S.C. § 1581(a) (1988) and enters judgment in favor of defendant.

## BACKGROUND

This case involves the classification, for customs purposes, of extremely small, acrylic polymer spheres ("microspheres") that entered the United States in 1992. The microspheres cumulatively look like powder to the naked eye. The powder is added to other substances, such as ink and paint, to change the weight and texture of those substances.

The parties agree that the subject microspheres are manufactured using a suspension polymerization process. In this process, hydrophobic monomers are mixed with water and isobutane. The hydrophobic monomers collect and form droplets. When heat is applied, the droplets form spherical, acrylic polymer shells encapsulating isobutane. When the heat is removed, the microspheres retain their shape.

If additional heat is applied to the microspheres, the isobutane and spherical shells expand. Eventually, the microspheres can grow to about 40 times their original size, so that each microsphere has a diameter of about 35 microns. When the additional heat is removed, the microspheres retain their expanded size.

If the isobutane is removed from within the microspheres, the microspheres may collapse because they are so small, and their walls are so thin, that they cannot support themselves. The microspheres do not,

however, revert to the state that they enjoyed prior to suspension polymerization or heating.

## DISCUSSION

When faced with a motion for summary judgment, the Court determines whether a case presents any genuine issues of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986). If the case lacks genuine issues of material fact, and the moving party is entitled to judgment as a matter of law, then the Court may grant summary judgment. USCIT Rule 56(d).

Customs' classification of the subject microspheres as acrylic polymers that are plastics enjoys a statutory presumption of correctness. 28 U.S.C. § 2639(a)(1) (1988). Plaintiff bears the burden of overcoming this initial presumption. *Id.* To determine whether plaintiff can overcome the presumption in favor of Customs, the Court will first consider whether the classification applied by Customs describes the subject microspheres. *Jarvis Clark Co. v. United States,* 2 Fed. Cir. (T) 70, 75, 733 F.2d 873, 878 (1984). The Court will then consider whether the classification proposed by plaintiff better describes the microspheres. *Id.*

A. *Customs' Classification of the Subject Microspheres as Acrylic Polymers that are Plastics:*

Plaintiff and defendant agree that the subject microspheres are acrylic polymers in primary forms.

Plaintiff claims, however, that Customs erred by further classifying the microspheres as acrylic polymers that are plastics. Plaintiff points out that applicable chapter notes define "plastics" as certain "materials" which are capable, at or after the moment of polymerization, of undergoing a process whereby external influence, such as heat and pressure, forms them into "shapes" which are retained on the removal of the external influence. *Notes to Ch. 39 of the HTSUS* (1992). Plaintiff claims that this definition requires a material to be capable of being formed into various "shapes," such as pyramids, cubes, and spheres, in order to be classified as plastic. Because the subject items are only formed into one shape, that of a sphere, during suspension polymerization, plaintiff claims that the items cannot be classified as acrylic polymers that are plastics. The Court disagrees.

The definition of "plastics" given in the binding chapter notes is simply written in plural form. It describes "materials" which, under certain circumstances, are capable of being formed into "shapes." It does not require a particular material to be capable of being formed into "various," "assorted," or "different" shapes in order to be classified as plastic.

Upon review, the Court finds that the subject microspheres fall within the relevant definition of "plastics" because at or after the moment of polymerization, they undergo a process whereby heat causes them to form shapes which are retained upon the removal of the heat. First, at the moment of polymerization, heat externally influences droplets of monomers, causing them to form spherical polymer shells around isobu-

tane. These shells retain their spherical shape after the heat dissipates. Second, if additional heat is applied after the moment of polymerization, the shells expand to more than 40 times their original size. Again, the microspheres retain their expanded shape when the heat is removed.

Moreover, the Court notes that the microspheres are commonly and commercially referred to as "plastics." This is illustrated by plaintiff's own documents. For example, one of plaintiff's documents is entitled, "EXPANCEL Thermo*plastic* Microspheres" (emphasis added). Another document explains, "EXPANCEL microspheres are thermo*plastic* hollow spheres" (emphasis added). In light of these admissions, plaintiff's claim that the microspheres cannot be described as "plastics" appears disingenuous. The Court finds that the subject microspheres are classifiable as acrylic polymers that are plastics.

B. *Plaintiff's Proposed Classification of the Subject Microspheres as Other Acrylic Polymers:*

Having determined that the subject microspheres can be classified under the subheading for acrylic polymers that are plastics, the Court turns to consider the classification proposed by plaintiff. Plaintiff claims that Customs should classify the subject microspheres as other acrylic polymers. Defendant agrees that the subject microspheres can be described as "other acrylic polymers." Defendant asserts, however, that the microspheres should not be classified as such because they are more specifically described as "acrylic polymers that are plastics."

When an article is described by more than one provision of a tariff act, it is to be classified under the provision that describes it most specifically. *HTSUS Gen. Rule of Interpretation* 3(a) (1992). The Court will only classify merchandise under a basket provision, such as the subheading for other acrylic polymers, when no other provision describes it more specifically. *Regaliti, Inc. v. United States,* 16 CIT 407, 408 (1992).

As discussed above, the Court finds that the subheading for acrylic polymers that are plastics describes the subject microspheres. This subheading describes the subject microspheres more specifically than the subheading for other acrylic polymers because it specifies that the acrylic polymers must be plastic. Consequently, the Court finds that the subject microspheres should not be classified under the basket provision for other acrylic polymers.

CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that defendant's motion for summary judgment is granted; and it is further

ORDERED that plaintiff's motion for summary judgment is denied. Judgment will be entered accordingly.